final case in our call today is agenda number 15 case number 108 108 Ryan T Simmons as special administrator versus John D. Homatas on stage productions Inc etc Ampeland good morning may it please the court I'm Matthew Burke and I represent on stage productions incorporated the appellant we asked the court today to reverse the trial court and the appellate courts decisions that concluded that the plaintiffs complaints state a cause of action for several reasons neither of them do first the field of alcohol related liability has been preempted by the General Assembly second century-old Illinois jurisprudence has firmly held that the plaintiffs in this case cannot establish the essential element of proximate cause third there's no duty and fourth even if preemption principles are set aside and the broader concepts of duty approximate cause are overlooked the plaintiffs complaints do not establish cause of action under restatement section 876 this court and many appellate courts have consistently held that the General Assembly through its initial enactment the tram shop back back in 1872 and its continued amendments and adjustments to that act indicate that the General Assembly has preempted the field of alcohol related liability Supreme Court here over the past four or five decades in cases such as Cunningham in the 60s Wimmer in the 80s and Charles in the 90s and lastly McCulloch in 2003 have indicated that deferral deferral to the legislature is appropriate under the circumstances now in Charles it was mentioned that a nest a wide net had been cast in the field of alcohol related liability well since McCulloch in 2003 the General Assembly after years and years of debates enacted an additional piece of legislation called the drug or alcohol impaired minor responsibility act and that net got somewhat wider and created different remedies against different classes of defendants including non-residential owner excuse me owners or operators of non-residential premises who permit the consumption of alcohol now in addition to the Supreme Court cases that have uniformly held that the field of alcohol related liability is generally left best to the legislature the appellate courts under extremely similar circumstances have also done so for instance the Gustafson case of the fourth district in 1982 is illustrative in that case a tavern employee took an intoxicated quarrelsome and disorderly incoherent patron out to his car where five of his children were sitting an accident occurred killing some of his children in that case in addition to finding no duty the appellate court held that deferral to the legislature was appropriate the plaintiff's complaints in this case each contain references over 50 times to alcohol or intoxication characterization of these complaints as anything but alcohol related would be a the trial court in the appellate court in this case it overlooked preemption principles all together and to do so here would be a radical departure from stare decisis and would also frustrate the idea of the separation of powers now I mentioned earlier that in 1872 the Dram Shop Act was passed and it created a remedy unknown at common law and the reason for that was prior to its enactment the courts Illinois jurisprudence foreclosed these types of actions based on a lack of proximate cause at common law in Illinois the proximate cause the superseding cause of incidents like this was enabled bodied man voluntary consumption of alcohol and that constituted the proximate cause of any of his foolish acts and the damages that resulted in this case Mr. Modis is consumption of alcohol is intoxication is driving 80 miles an hour on the wrong side of Route 25 10 miles away from onstage constitutes the proximate cost Mr. Burke didn't the club create the unreasonable risk of harm to the others when it knowingly placed an intoxicated person behind the wheel ordered him to on the public ways well the circumstances surrounding the departure it doesn't do anything to frustrate the common law analysis that the proximate cause is an adult who takes to the road after becoming intoxicated and that expression has been more recently stated in a first district case called Fugati versus Galvin at common law when the courts uniformly would hold that the adults actions were the proximate cause it didn't depend on the circumstances surrounding the departure from the tavern or the home or the wedding or the sporting event it operated as a superseding cause what this cause of action doesn't arise from the sale or gift of alcoholic beverages doesn't know it doesn't and I think that characterization is a non sequitur and the reason being is that common law there was no cause of action for the foolish acts of an intoxicated person it didn't matter that the intoxicated toxication resulted from the gift or sale of alcohol for instance in the minor responsibility act one of the provisions doesn't have anything to do with gift or sale of alcohol it has to do with the permission of alcohol being consumed by minors on non-residential property so the plaintiffs have made the argument that well this case doesn't involve social hosts per se and doesn't involve a tavern or commercial purveyor of alcohol well that ignores that at common law these types of actions were completely foreclosed the Dram Shop Act and the General Assembly's more recent enactment of the Responsibility Act created an area and remedies that did not exist at common law. What about section 876 of the restatement? Well it's on stage's position that 876 cannot convey a cause of action under the circumstances in this case because the legislature has occupied the entire field. In addition to the argument with respect to preemption, plucking restatement 876 doesn't necessarily leave aside the general principles of duty and proximate cause and in addition to continuing to defer to the legislature many cases including Wimmer and Gustafson and Brewster have have held that there's no duty under circumstances that are very similar because to impute such a duty onto the open roads would be overly burdensome but even if those cases incidentally also stand for the proposition that you don't even arrive to a general duty analysis without first inquiring whether a special relationship existed in this case the Simmons's decedent didn't ever have a special relationship with on stage and the Chiarello decedent had a brief business invitee invite-over relationship that had ceased by the time this accident occurred at ten miles away. You mentioned preemption a couple times counsel doesn't back to that injuries arising out of the sale or gift of alcoholic beverages isn't that exactly what the Charles versus Sigfrid case of this court says would be preempted and I think you've admitted that's not the facts that are before us right? There is not a sale or gift but on stage's position would be that it's not in order to come under the penumbra of the area there is not a prerequisite that a gift or sale occur for instance in the Responsibility Act there is no gift or sale that needs to be that needs to have occurred in order to trigger liability under that particular act. In this case for instance under the exact same facts had Mr. Hamadis been a minor they would have through the legislature cause of action against on stage but Mr. Hamadis was 25 years old in fact in this case the legislature has provided an additional remedy to the plaintiffs that didn't exist at common law they could have sued the commercial provider of alcohol to Mr. Hamadis which would give them an additional remedy in addition to those that are being sought against Mr. Hamadis. But even if the broader notions of duty and proximate causes Illinois common law knows them and even if you apply the individual factors that restatement 876 lists under the circumstances here and even if you set aside preemption principles the complaints don't state a cause of action there's several factors the 876 lists and one is the nature of the act encouraged and the only act that's alleged to have been encouraged in the plaintiff's complaint is encouraging Hamadis to consume alcohol. Devoid from the complaints is any allegations that on stage somehow encouraged Mr. Hamadis to drive on the wrong side of the road 80 miles an hour 10 miles away. The next two factors are the amount of assistance given and the presence or absence at the time of the tort well certainly on stage was nowhere near the time of this collision and Wolf versus Liberis first district case I believe mentioned that you can't substantially assist if you're not there and so that leaves only whether or not the type of encouragement amounts to a level that on stage didn't possess a relationship with Mr. Hamadis that would hold moral sway over him. The next two factors are the relationship between on stage and Mr. Hamadis certainly a two-hour business invite or invitee relationship that expired at the time this incident weighs heavily against recognizing a cause of action under 876. The last factor listed in the restatement is a state of mind. Unlike the Woods versus Cole case where a diabolical plan was hashed amongst the defendants here it can't be said that on stage had any malicious intent. But didn't they intend I mean didn't they actively encourage him to bring his own alcohol and to consume as much as he could? Well sure and once you talk about encouraging alcohol consumption then I think that you get into the area that the General Assembly has occupied. Certainly every tavern through its marketing plans encourages people to consume alcohol. For instance I mentioned earlier the Wimmer case and in the Wimmer case that case involved two taverns over the state line in Wisconsin and since at the time they weren't subjected to the Dram Shop Act the plaintiff attempted to lodge a alert underage Illinois residents across state lines through its marketing and advertising. In addition to that when those underage folks would leave the taverns and travel back to Illinois they were provided with maps that directed them to take certain routes that would evade police detection. Even under those facts and those quote-unquote encouraging to drink etc. the Supreme Court back in 85 deferred to the legislature and in addition held that there could be no duty that extended from those taverns to the place of the accidents. In this case did your client provide valet parking? According to well the allegation is that not only do they know he was intoxicated but they instructed him to leave. And they put him behind the wheel of the car? Correct. And but that's not conduct encouraging him to commit this offense? Well I wasn't it very foreseeable that disaster would be imminent? Well those almost Champaign Grain Association case and the Gustafson versus Matthews case I talked a little bit earlier about the Gustafson case. The Winky case involved a trade association sponsorship of a party where alcohol was served and a attendant became intoxicated. Thereafter employees of the trade association took the intoxicated attendant in a car four miles back to his car. Placed him in the wheel of the car and he was involved in an accident later on. Under those circumstances the fourth district deferred to the legislature and also said that no duty could be extend from the association to the person on the road. Was there sale of alcohol in that case? I don't know that there was a sale of alcohol necessarily because it was a sponsored party by an association. But the sale of alcohol has never been determinant of whether there's preemption or not. For instance the books are filled with social host cases where causes of action have been declined. Thompson versus Trickle involved a case where Sears sponsored a party and a restaurant Fox's sold and injured others. So to trigger the preemption principle gift or sale isn't a prerequisite. And the reason being is a common law the foolish acts of someone who willingly and voluntarily became intoxicated was considered the proximate cause. Would there be a question about the voluntariness of the action of this extremely intoxicated person? Well that has never also been a question. The other liability would extend two cases that come to mind are the Quinn and Haven cases where the issue came up that these college folks were required to drink. And so in those cases the voluntariness was an issue but it's on stage's position that neither of those cases survive the trial's decision. In the complaints own allegations the Mr. Modest brought his own liquor into the club and consumed it voluntarily. He wasn't forced or under duress to consume that. You mentioned that your clients weren't in the car at the time. If this court finds a duty you're not reasonably arguing foreseeability area. Well there is authority from this court that says criminal acts of third parties are always to be deemed by the courts to be unforeseeable. So I wouldn't abandon that position. Even though that they knew of the intoxication? Were imminently aware of the intoxication when they put him in the car? Well I think that you know any tavern that has a parking lot next door to it in a general sense knows that intoxicated people can be involved in automobile accidents whether they could specifically foresee someone going 80 miles an hour on the wrong side of the road 10 miles away I think is a different question. I do think that in common law when they analyzed whether to extend liability under these circumstances under approximate cause analysis it doesn't neatly fit into the two-pronged analysis that this court has adopted over the years. It would probably be better suited to be analyzed under a duty analysis. And when that has been done by the appellate courts and in Wimmer the conclusion has been that to extend a duty under the circumstances would be overly burdensome. I see that I'm running out of time so I'll quickly conclude by asking the court to reverse the trial in the appellate court decisions and dismiss the plaintiff's complaints. And I'll reserve some for rebuttals. Thank you. May it please the court I'm Robert Spears I represent Ryan Simmons as a special administrator of the estate of his wife April Simmons and his daughter Addison Simmons. I'm also arguing here on behalf of the third plaintiff in this case Giottano Sciarrello who is the special administrator of the estate of Giottano Sciarrello. Let me ask you a question starting off about duty. Yes. Aside from the encouraging of drinking facility what was the duty of on stage through its parking lot attendant in allowing the driver to take the car? Well I think what we've tried to emphasize throughout this case from the trial court right through here to the Supreme Court is that we're you know to focus on one particular part of the entire course of conduct isn't really a fair assessment of what and it's not the same because it is it's not our position that that is the same case that we're talking about here and whether or not there is a yeah it's a different case and I would say under those circumstances that you've What have I removed other than the fact that it's not the same premises as the business in question and there was no encouragement of drinking alcohol? What's the difference? It's a big difference. It's a huge difference. It's the basis of our case and our the basis of our case here is that the entire course of conduct of on stage here knowingly encouraged the substantial assistance and conduct of the tortious conduct of homodis. It's the whole course of conduct and it starts frankly with the business plan and the tortious act of homodis. It starts with that when does it end at the next bar when he leaves when he gets home when Well the duty ends when when the consequences of their conduct ends and if he's as we allege he is he was intoxicated when he left the premises of on stage and was intoxicated when this occurrence took place that's all part of the tortious conduct of homodis and it's part of the encouragement and assistance that on stage provided him. That's the basis of our allegation in this case and so what we are really saying here and what we've alleged is that on stage knowingly engaged in a course of conduct to encourage and insist the course of the tortious conduct of homodis. What was the tortious conduct of homodis? It was number one and maybe it's worthwhile talking about the two stages of what homodis did here. It was one getting intoxicated and then two driving while intoxicated and what did on stage do to actively encourage and assist homodis in those two steps of this tortious act and I think that's where the analysis of this case needs to be. I don't think that's any mistake or the facts in this case and when he filed his brief his dissertation on the facts is about a half a page whereas the complaints that were filed in this case and the supplemental statement of facts that were included in the briefs of both of the appellees here contain a litany of conduct on the part of on stage that in fact clearly demonstrates encouragement and assistance of both stages of the tort here. Counsel, if a social host, private individual, had a party in their home and didn't provide alcohol but encouraged people to drink and then somebody like this got intoxicated and he put him in his car and said leave the house, would there be liability? Well that's again that's a different case and I suppose it's up to this court to decide whether there would be. How is it a different case? It's a different case for a couple of reasons. Number one it's a social host case. This is not a social host case. This is a business enterprise. This court has addressed the social host issue on several occasions finding no One of the tort that we are saying here, driving while intoxicated, involves getting intoxicated. The social host in most cases and even in the example you have given to me here to respond to is not invested in the intoxication of the drunk that ultimately drives the car. Here we are alleging and we believe we are not just in the drinking by Homatis but in the intoxication of Homatis. And their whole business plan was focused on that. Their best customer in this full nudity strip club was a customer who was impaired and so their whole plan here was to encourage that impairment. And as we have alleged in our complaints in this case they did many things to help them get an intoxicated customer here and they in fact got one in the form of John Homatis in this case. That's different from the social host who simply provides the alcohol and is not invested in the intoxication and in fact probably doesn't want the intoxication of its a positive course of conduct but may not be a viable cause of action based on this court's prior social host declarations and based upon the fact that the social host was not necessarily invested in part one of the of the tort. Don't we risk though turning social host immunity on its head? I don't think so. I think the appellate court decision were very careful to limit the scope of their decisions in this particular case. And again what we're really talking about here is a knowing course of conduct that actively assists and encourages both the intoxication for the personal gain of the assister. In this particular case it's the financial gain of Onstage. They wanted drunks in their place because they would spend more money and then after they got the drunk spending more money the drunk got so drunk he was no longer useful to them and at that point what they decided to do was force the drunk not only encourage the drunk but force the drunk to drive his automobile away from the premises and foist him on to the public highways of the state. And that's the conduct we're addressing and that is a very narrow situation. It is our position. It is not we are not asking for a dramatic expansion of any social policy here. It's a very narrow set of circumstances that apply to a very narrow set of defendants and and that's what we're talking about. So if Onstage sold the liquor they would have the benefit of the Dram Shop Act? Absolutely. Isn't that rather inconsistent then? Well it may be or it may not be but that's what this court has said. If you're a Dram Shop you have Dram Shop liability and you don't have any other liability and that's I think the way I read the cases on that issue. So if they if they sold the alcohol and this happened they would have Dram Shop liability but they didn't and of course because they didn't there was no motivation for Onstage to do anything but proceed with their social plan to or their business plan. Can we return while you still have time? Right straight ahead. Yeah. To the duty analysis? Yes. I mean it seems that you did have to be that the duties are offered to Amatis and no not to Amatis, to the Amatis's friend's estate and the young widow or the young bride. What is the basis of that duty? Well how does that duty arise? Can you explain it to me? Well it depends is I it depends whether you want to make the analysis on section 876 which the appellate court did or whether you want to make the analysis based on general common law duty analysis that the trial court did. Which are you basing it on? I think we have a cause of action on either on either basis. I think frankly the appellate court decision on 876 really provides the most coherent and cogent framework if you will for the analysis here. Because clear with clearly we had an active course of conduct that actively assisted and encouraged this tortuous conduct of Amatis. There's a litany of wrongdoings you might say. From inviting the men to bring their own liquor in, from providing mixes and seltzer water apparently to enhance the drinking, bringing him to the point where he was vomiting in the bathroom, till he was moved forward and the car was moved up and he was put in the car and told to leave. At what point did the duty to these later victims arise in that string of events? Well I'm not sure you can say that at any particular point the duty arose. The duty of course that people have generally you know depends on the on the circumstances and who who the duty extends to. We say here the duty extends to the general public not to actively encourage and assist the tortious acts of another. And and I think conceptually the tortious act here is something that takes place over time. Just stop. So the duty is to the general public not to the individual plaintiffs? It is to the individual plaintiffs in this case because they were injured. Because they were injured. But it runs to the general public because he would the out onto the public highways. And so again just to kind of continue with it with the discussion of what Onstage did, their business plan was to get this guy drunk and then when they got him so drunk that he was no longer useful they put him out on the roadway. And that's I think the conduct that both the trial court and the appellate court focused on and why their decisions are in our in our minds very narrow ones limited to this fact situation. And again I think the appellate court decision on 876 is is the proper framework to to look at the conduct of Onstage here. You know that the Onstage defense here basically is is simply this. We are not a dram shop so we have no dram shop liability. And part two is it doesn't matter what we did here because there can never be a common law cause of action in any situation that involves alcohol. Cannot cannot ever be one. And we say there can be under certain circumstances and in fact there have been under certain circumstances in the Quinn and Haven cases which although Onstage takes the position that this court has disavowed those decisions, both of those cases were decided before both Charles and Wakulich. And Charles and Wakulich did not overrule those cases and in fact the Wakulich decision which was written by Chief Justice Fitzgerald here simply says the conduct in Wakulich does not rise to the level of the conduct in Quinn and Haven and that and so we won't get to that issue. That's really what that case says. And it's our position that really the conduct that was involved in Quinn and Haven is not as egregious as the conduct that is involved in our case before the court. Those cases would be closer to the and in commenting on some of the cases that have been relied on by Onstage in this case. The Wimmer case involving the Wisconsin Tavern, again that's a dram shop case, not a case like we have here. We have a kind of a classic dram shop case here in that particular case. And so the conduct that was involved by the Wisconsin Taverns was the court basically said look we don't have a dram shop extension into Wisconsin and we don't have a common law cause of action against dram shops here. That's simply what that case said. The Gustafson case where the drunk was carried out to the car came to the the court in kind of a crippled posture because the dram shop case that could have been filed was apparently not filed until after the statute of limitations had run and so the court said we can't consider the taverns status as a tavern in this case in determining liability. We must only look to the status of the defendants here as property owners, as parking lot owners. And so we can't extend the duty to ascertain for all parking lot owners whether or not people are intoxicated before they put them into the car. So that case is again I think in a little crippled posture for purposes of relying on it in our case. The Wienke case is arguably closer and more problematic for us but again in the Wienke case we have a situation where it is a provision of alcohol case. Number one it's more like a social host case if you will and again the people providing the alcohol in that case, the employers, were not invested in the they probably didn't want him to become drunk and we don't even know if they knew he was drunk when they took him to the car. So that case is a totally different situation than we have here where we have a clear conscious effort to get somebody intoxicated and then literally insisting and forcing them to drive on the public roads. Was Mr. Hamadas required to drink on stage? No. He was not. He was not required to drink. He did drink and he voluntarily brought the alcohol in and when he did that and again this is what on stage wanted him to do and encouraged him to do and assisted him to do in consuming the alcohol to the point of intoxication. Again we're not we're not asking this court in this case to establish some broad social policy on social host liability or any other broad policy. This is a very narrow case involving very egregious facts and that clearly is the kind of case that is anticipated by section 876 of the restatement and as the appellate court clearly found did in fact create a cause of action based on that restatement section. Thank you. Briefly, when the plaintiffs advocate that this is a narrow set of circumstances based on unique facts I believe that the plaintiffs are asking this court to anoint one of the many permutations that the Wachulich, the Charles and even the Young versus Brico courts caution against and counseled One additional case I did want to mention that isn't contained in the briefs is McKeever versus Hamatoya. In that case, my apologies your honor I have not I just just determined that discovered that this morning. I'll move on Chief Justice. If the panel has no more questions I'll conclude by asking that this court reverse the appellate court and dismiss the plaintiff's complaints. Counsel, if you file a motion after the fact for us to consider that case, we'll consider it. Counsel may not object. Thank you, your honor. Case number 108-108 will be taken under advisement of agenda number 15.